***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
2. At all times relevant hereto, defendant-employer was insured for workers' compensation purposes by American Home Assurance in compliance with the North Carolina Workers' Compensation Act against liability arising under the Act.
3. At all relevant times herein, including December 31, 2000, an employment relationship existed between plaintiff and defendant-employer at the Tarboro, North Carolina store.
4. Plaintiff's average weekly wage will be calculated according to a Form 22 wage chart or comparable wage records.
5. Plaintiff has not worked for defendant-employer since January 1, 2001.
6. Plaintiff through counsel filed a Form 18 notice on August 1, 2001 and defendants received plaintiff's Form 18 on August 2, 2001.
7. Subsequent to plaintiff's filing of her Form 18, defendants did not respond thereto until after plaintiff filed a Form 33 request for hearing.
8. Defendants filed a Form 61 denying the claim on or about November 28, 2001. Defendants first filed a Form 63 payment without prejudice on or about November 23, 2001.
9. Plaintiff alleges she sustained a compensable back injury arising out of and in the course of her employment on December 31, 2000.
10. Plaintiff further alleges that she has been disabled within the meaning of the Act since January 1, 2001 as a result of the injury by accident of December 31, 2000.
11. Defendants allege that plaintiff's claim is time-barred due to her failure to timely report her injury.
12. In addition to the deposition transcripts and the exhibits attached thereto, the parties stipulated into evidence a packet of records consisting of plaintiff's medical records, discovery responses, and several Industrial Commission forms.
13. The issues to be determined by the Full Commission are whether plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on December 31, 2000, and if so, to what medical and/or indemnity benefits is she entitled.
14. The depositions of Dr. Gilbert R. Alligood, Dr. David Charles Miller, and Rebecca Wilson, R. N. are a part of the evidentiary record in this case.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On the date of the deputy commissioner hearing in the matter, plaintiff was thirty-two (32) years old. Plaintiff completed the tenth grade in school and recently obtained a G.E.D. Plaintiff is a certified nursing assistant, but has not worked in that capacity in some time. As of the date of the deputy commissioner hearing, plaintiff was not working in any capacity for any employer.
2. On December 31, 2000 plaintiff was working in a part-time capacity as a cashier for defendant-employer, and had been so employed for a month and a half. On the evening of December 31, 2000, plaintiff was cleaning and stocking the registers with plastic bags. In order to do the latter task, plaintiff pushed a cart filled with cardboard boxes that contained the plastic bags to the different registers. Plaintiff lifted each box out of the cart, placed the box on the floor, bent down to tear open the box, then turned to place the bags on a shelf at the register. Plaintiff testified that on the 20th register, after opening the box, she turned to her left and felt a sharp cramp on her right side that went from her buttock to the top of her back. Plaintiff left work early that night, indicating that her back hurt, but she did not tell her supervisor or any coworkers the purported cause of her back pain.
3. When plaintiff awakened the following morning, she experienced right facial and right hand tingling and numbness. Plaintiff was scheduled and did report to work on January 1, 2001, but left work early to go to the emergency room to report her unusual symptoms. Plaintiff told her supervisor about her right-sided numbness and tingling, but she did not report back or neck pain. This was plaintiff's last day of employment for defendant-employer.
4. Plaintiff presented to the emergency room at Heritage Hospital on January 1, 2001 and reported right hand and right facial numbness. Plaintiff did not report an injury or any incident that precipitated these symptoms, and she did not report neck or back pain. Plaintiff was diagnosed with a sinus infection and prescribed medication.
5. Plaintiff next presented to her family physician's office on January 2, 2001, with reports of right hand, right lower leg, and right facial paresthesieas. Plaintiff returned to Dr. Alligood, her family physician, on January 4, 2001 with continued complaints of right-sided numbness, and also with neck stiffness. Plaintiff did not relate to her family physicians any twisting incident at work that may have precipitated her complaints. In fact, Dr. Alligood, during his treatment of plaintiff, was never aware that she contended there was an incident or injury or trauma that caused her problems, and he was told nothing other than plaintiff's complaints were a spontaneous occurrence. Furthermore, Dr. Alligood is not aware of any type of injury that would cause the symptoms with which plaintiff complained in January 2001.
6. Due to her unusual constellation of symptoms, plaintiff's physician began to suspect that plaintiff was suffering from some sort of "central problem" in her brain, such as demyelinating disease or multiple sclerosis. Plaintiff was referred for a number of diagnostic tests such as a CT scan of the brain and an MRI, and plaintiff was referred to a neurologist for further examination.
7. Plaintiff was evaluated by Dr. Anthony C. Breuer at East Carolina Neurology on January 10, 2001, at which time she complained of numbness and tingling on the right side of her body since January 1, 2001, with right shoulder pain on and off for the past two years. Plaintiff did not report a history of head, neck, or back trauma to Dr. Breuer. Dr. Breuer's diagnosis was possible demyelinating disease, and he ordered additional testing. The additional testing was suggestive of the demyelinating disease (left pontine abnormality of the brain), and Dr. Breuer wanted to do more testing to corroborate the abnormal findings. Plaintiff did not return to Dr. Breuer after January 22, 2001, despite the abnormal findings he found on her diagnostic tests.
8. Plaintiff was seen by Dr. John G. Morgan, Dr. Alligood's partner, on January 24, 2001, at which time she was continuing to complain of weakness, numbness, and pain in the right upper and lower extremities. At this time, plaintiff insisted upon a referral to Dr. Miller for an orthopaedic evaluation; this was done, although Dr. Morgan did not appear convinced that this was necessary in that the work-up thus far had been "excellent and right on target."
9. Plaintiff was seen at Carolina Regional Orthopaedics on February 5, 2001, where she again did not report a twisting incident or any trauma to explain her reported symptoms of right shoulder, right neck, and right leg pain for a month and a half "since the end of the year." More diagnostic tests were ordered.
10. Plaintiff presented to Heritage Hospital on April 4, 2001 for an EMG and nerve conduction studies of the bilateral upper extremities. Again, plaintiff reported that she "had no recollection of trauma." These tests were deemed normal.
11. On May 3, 2001 plaintiff was seen by Dr. Aysha Akhtar at the Neurology Clinic at the University of North Carolina Hospital in Chapel Hill. Once again, plaintiff did not relate to the physician any specific onset or injury other than while at work in January 2001 she began having symptoms of right-sided numbness and tingling. Dr. Akhtar felt that it was likely that plaintiff did not have multiple sclerosis due to her complaints of pain, which are not usually associated with such a diagnosis, and he labeled her complaints as myofascial pain syndrome.
12. By June 27, 2001, when she reported to Dr. Morgan, plaintiff's complaints and symptoms had changed from a neurologic problem to primarily a pain (muscular/orthopaedic) process or problem. Dr. Alligood was uncomfortable that plaintiff's neurological complaints were essentially dropped and no longer being followed, and he felt that plaintiff's neurologic problems should be finalized. According to Dr. Alligood's testimony, which is deemed herein to be credible and is accepted herein as fact, plaintiff's June 2001 orthopaedic symptoms were not consistent with the symptoms with which she presented to Tarboro Clinic and Heritage Hospital in early January 2001.
13. The very first medical note that relates a direct onset or cause of plaintiff's symptoms was on July 11, 2001, at which time plaintiff reported to Dr. Miller and Dr. Miller's physician's assistant that her problems began when she "pull[ed] boxes out of a cash register" at work.
14. Plaintiff hired legal counsel, and a Form 18 dated July 31, 2001 was filed with the Industrial Commission.
15. Plaintiff did not report her claim to defendants until August 1, 2001, which is more than eight months following the alleged injury by accident on December 31, 2000. At the deputy commissioner hearing, counsel for defendants tendered three witnesses for defendant-employer who, had they testified, would have stated under oath that they were unaware that plaintiff was claiming that she injured her back in an incident at work on December 31, 2000. Plaintiff's reporting of the alleged injury was not timely, and plaintiff has not come forward with a reasonable excuse as to why her reporting was not more timely made. Defendants' failure to timely respond to plaintiff's late filed Form 18 that was received approximately seven months after her alleged date of injury did not result in prejudice to plaintiff.
16. Plaintiff continued to treat with Dr. Miller, who ultimately diagnosed C5-6 and C6-7 facet joint irritation and subacromial impingement. According to Dr. Miller, plaintiff's shoulder pain is attributable to this facet joint irritation and impingement, and there is a causal relationship between the incident that allegedly occurred at work on December 31, 2000 and plaintiff's diagnosis of facet joint irritation. Dr. Miller treated plaintiff with cervical epidural injections, assigned a five percent permanency rating, and later referred plaintiff to Dr. Robert J. Serro at Carolina Rehabilitation Surgical Associates for pain management. Dr. Serro agrees with Dr. Miller's diagnosis and with Dr. Miller's opinion that there is a causal relationship between the alleged work incident on December 31, 2000 and plaintiff's diagnosis and disability.
17. While the opinions expressed by Drs. Miller and Serro are corroborative of plaintiff's claims that her pain and symptoms were caused by a work incident on December 31, 2000, plaintiff's testimony that such an incident occurred is deemed not credible. This finding is based upon the fact that plaintiff did not report any such incident to any of the numerous physicians and medical care providers until July 11, 2001, seven months after the purported injury. Moreover, plaintiff did not report any such incident or injury to defendants until August 2001, eight months after it allegedly occurred. Finally, plaintiff's initial symptoms were of a neurologic nature, and only gradually changed to more of an orthopaedic problem. Plaintiff's claim that an injury occurred at work on December 31, 2000 that ultimately led to the diagnosis of facet joint irritation is not credible.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff, due to her incredible testimony as found above, has not met her burden of proving by the greater weight of the evidence that she sustained an injury by accident or specific traumatic incident on December 31, 2000 that led to her ultimate diagnosis of facet joint irritation. N.C. Gen. Stat. § 97-2(6), Adams v. AVX Corp.,349 N.C. 676, 509 S.E.2d 411 (1998), Anderson v. Lincoln Constr. Co.,265 N.C. 431, 144 S.E.2d 272 (1965).
2. Plaintiff failed to give defendants timely notice of her claim, and she did not come forward with reasonable excuse regarding her delay. N.C. Gen. Stat. § 97-22.
3. Because plaintiff has failed to prove that she suffered a compensable injury by accident or specific traumatic incident as defined in the Act, she is entitled to no benefits under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-1, et seq.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is HEREBY DENIED.
2. Each party shall bear its own costs.
This the ___ day of September 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER